## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                    **CASE NO: 6:24-cr-272-PGB-DCI**

**TERRENCE DENARD PERKINS**

_____/

## ORDER

This cause is before the Court upon the following filings:

1.    Defendant Terrence Denard Perkins' ("**Defendant**" or "**Mr. Perkins**") Motion to Suppress Evidence (Doc. 38 (the "**Motion**")), and the Government's response thereto. (Doc. 51).

2.    Defendant's Second Motion to Suppress Evidence (DVR). (Doc. 71 (the "**Second Motion to Suppress**")).

3.    Defendant's Amended Motion to Suppress Evidence (Doc. 72).[1]

Additionally, the Court conducted an evidentiary hearing on the Defendant's Motion. (Doc. 73). Upon consideration, and with the benefit of briefing and oral argument, the aforementioned Motions are denied.

## I.    BACKGROUND

Mr. Perkins is charged in a Superseding Indictment with possessing over five kilograms of cocaine with the intent to distribute (Count One); possessing a

---

[1]    The Court construes Defendant's Amended Motion to Suppress Evidence (Doc. 72) as a supplement to his original Motion to Suppress Evidence (Doc. 38).

firearm during and in relation to a drug trafficking crime (Count Two); and possessing a firearm as a convicted felon (Count Three). (Doc. 44). Before the Government filed the superseding charges, Mr. Perkins filed the instant Motion to suppress evidence seized from the residence and carport at a property located at 1442 Mara Court, Sanford, Seminole County, Florida 32771 ("**1442 Mara Court**"). (Doc. 38). The Defendant argues that the search warrant lacks probable cause because the information was "either stale or conclusory" and did not establish a "nexus" between the premises and the searched-for items. (*Id.* at p. 3). The Defendant also claims that the warrant was overbroad because law enforcement was allowed to search for items unrelated to cannabis. (*Id.*). Lastly, the Defendant asserts that the agents exceeded the scope of the warrant by searching vehicles in the backyard of the residence. (*Id.* at p. 4).

In response, the Government argues that the Defendant lacks standing to challenge the legality of the search. (Doc. 51, pp. 5–7). The Government further states that the warrant was supported by probable cause, as a law enforcement officer detected the smell of burnt cannabis coming from the residence and because the Defendant is known to law enforcement as a "high-level Cocaine and Cannabis Trafficker in Seminole County." (*Id.* at pp. 8–9). The Government also contends that the warrant was not overbroad, as it authorized law enforcement to search for controlled substances, drug packaging, drug paraphernalia, scales, measuring devices, and items indicating control over the property being searched. (*Id.* at pp. 10–11). Additionally, the warrant permitted the search of vehicles on the premises,

which was proper. (*Id.*). Finally, the Government asserts that the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984) applies.

## II.    LEGAL STANDARDS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Evidence seized as a result of an illegal search cannot be used by the government in a later criminal case. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *United States v. Bossio*, 824 F. App'x 818, 821–22 (11th Cir. 2020) (quoting *Brown v. United States*, 411 U.S. 223, 230 (1973)).[2] Therefore, generally, if someone claims a violation due to a "'search of a third person's premises or property,'" they have not had any of their Fourth Amendment rights violated. *Id.* at 822 (quoting *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). "Even so, a person 'may nonetheless have a reasonable expectation of privacy in that place by virtue of his or her relationship with' it." *Id.* (quoting *United States v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999)). To have standing under the Fourth Amendment, a claimant must show that they have "'an unrestricted right of occupancy or custody and control of the premises.'" *Id.* (quoting *United States v. Baron–Mantilla*, 743

---

[2]    "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

F.2d 868, 870 (11th Cir. 1984)). Factors indicating standing include possession of personal belongings stored there, being an invited overnight guest, and having some control and ability to exclude others. *Id.* (citations omitted).

The Fourth Amendment's protection extends to the curtilage; that is, "'the area immediately surrounding and associated with the home.'" *Collins v. Virginia,* 584 U.S. 586, 592 (2018) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)). And so, the automobile exception does not give a police officer the right to enter a home or its curtilage to access a vehicle without a warrant. *Id.* at 595. "[S]earching a vehicle parked in the curtilage involves not only the invasion of the Fourth Amendment interest in the vehicle but also an invasion of the sanctity of the curtilage." *Id.* at 596.

When evidence is seized as a result of an illegal search, it cannot be used by the government in a later prosecution. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) (citation omitted). The exclusionary rule, as it is known, is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348 (1974). "One exception to this exclusionary rule is the *Leon* good faith exception." *Martin*, 297 F.3d at 1312. Since the purpose of the exclusionary rule is to deter unlawful police misconduct, when officers act in "'objectively reasonable law enforcement activity'" and act in "good faith when obtaining a search warrant from a judge," the *Leon* good faith exception applies. *Id.* at 1313 (quoting *Leon*, 468 U.S. at 919). In other words, suppression is justified "'only if the officers were

dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *Id.* (quoting *Leon*, 468 U.S. at 926).

## III.    DISCUSSION

### A.    The Second Motion to Suppress

As an initial matter, the Court briefly addresses Defendant's Second Motion to Suppress. (Doc. 71). As discussed at the evidentiary hearing, the Defendant's Second Motion to Suppress is untimely.[3] (Docs. 71, 73).

In any event, the Defendant claims the judge (the "**issuing judge**") who issued the warrant to search the DVR "declined to find a nexus between the evidence sought and the DVR recording device." (Doc. 71, p. 1). The Defendant argues that the warrant provided that "[t]he court has reason to believe and does believe that there is *not* being kept in the above-described device the above-described evidence . . . relevant to proving that the felony offense(s) reference herein has been committed." (*Id.* at pp. 1–2) (emphasis in original). Thus, the Defendant argues that the issuing judge did not find a nexus between the crimes and the DVR hard drive. (*Id.* at p. 2). However, the Court finds the word "not" is a scrivener's error and should read "now."

---

[3]  Even if the Defendant's Second Motion to Suppress were timely, the Court did not require a response from the Government to resolve the motion. "A trial court has managerial power that has been described as 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all Fifth Circuit decisions prior to October 1, 1981).

In issuing the warrant to search the DVR, the issuing judge found probable cause to believe that evidence relevant to proving the offenses of trafficking in cocaine and possession of a firearm by a convicted felon is contained in the CCTV recording system's hard drive here. (Doc. 71-1, p. 5). The issuing judge further authorized law enforcement personnel to "search for digital data stored on fixed or removable memory or storage media devices within the CCTV recording system hard drive." (*Id.* at p. 6). The issuing judge stated that "[t]he actual examination of computer or storage media may be conducted after the service of this search warrant and the results will be submitted to the assigned Seminole County Sheriff's Office detective. Seminole County Sheriff's Office Digital Forensics personnel may assist with the search of the device, assessment and examination of any digital evidence, and conduct forensic imaging of digital evidence at a later time in the Seminole County Sheriff's Office Computer Forensics Lab." (*Id.*)

If the affidavit failed to establish a nexus between the offense conduct and the DVR, the issuing judge would not have found probable cause to believe evidence of drug trafficking and illegal possession of firearms is likely to be found on the DVR hard drive, nor would the issuing judge have authorized law enforcement to search the device. The issuing judge, therefore, mistakenly wrote "*not*" when the court meant "*now*."[4]

---

[4] Ultimately, the Court will not expend unnecessary resources to address the merits of an untimely motion. The defense suggests, without having presented any evidence to support its contention, aside from one sentence in the warrant, that the good faith exception does not apply because the issuing judge wholly abandoned his judicial role by issuing a warrant when the "nexus" was missing. (Doc. 71). When one reads the search warrant in its entirety, it is

Accordingly, the Defendant's Second Motion to Suppress is denied as untimely, and alternatively, denied on the merits.

## B.    Standing

To claim protection of the Fourth Amendment, a defendant must demonstrate that (1) "he personally has an expectation of privacy in the place searched," and (2) "his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). An ownership interest in the place searched is not required to convey standing, and one may have a reasonable expectation of privacy based on one's relationship with that place. *United States v. Arzate,* No. 1:12-cr-329-2-TCB, 2014 WL 1256075, at *9 (N.D. Ga. Mar. 26, 2014) (quoting *Chaves*, 169 F.3d at 690). For example, the Supreme Court in *Minnesota v. Olson*, 495 U.S. 91, 96–100 (1990) held that an overnight guest has a reasonable expectation of privacy in the host's home.

Whether a person's relationship with the place searched indicates a right to challenge the search depends on specific facts. *See Arzate*, 2014 WL 1256075, at *9 (collecting cases). For example, a defendant with mere presence in an apartment during a search was found to lack standing. *See United States v. Perry*, No. 8:09-

---

apparent that the officers conducting the search of the DVR hard drive acted in "objectively reasonable reliance" on the warrant issued by a neutral magistrate judge. *See Leon*, 468 U.S. at 992. The issuing judge repeatedly discusses the nexus between the criminal conduct and the DVR in authorizing a forensic examination of the hard drive. (Doc. 71-1). Therefore, a reasonably well-trained officer would not know the warrant was illegal despite the issuing judge's authorization. *See Leon*, 468 U.S. at 922 n. 23. Thus, assuming *arguendo* the warrant is illegal, the officers were still entitled to rely upon it.

cr-78-T-33EAJ, 2009 WL 1952778, at *7 (M.D. Fla. July 6, 2009). Similarly, a defendant who occasionally "crashed" at a residence and stored a couch there did not have standing. *See id*. However, an individual who had a key to an apartment, with unrestricted access, kept clothes there, and stayed over at least eight times a month had a reasonable expectation of privacy. *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988).

Here, the Defendant's father, Mr. Russell Hudson, testified at the evidentiary hearing. (Doc. 73). Mr. Hudson said he owns the residence located at 1442 Mara Court, the address that was searched, and acknowledged that his son does not live there. However, he testified that his son grew up in the home and had a room there. Mr. Hudson explained that his son occasionally spends the night at the residence and has a key to the house. He also said that the Defendant comes to the home several times a week. Mr. Hudson stated that his son visited the residence on the day of the search. He described his son's connection to the home as including receiving mail there, having the authority to invite guests when he is present, and being able to tell visitors to leave. Mr. Hudson noted his son visited him three to four times a week during the relevant period, sometimes showered there, and occasionally spent the night.

Mr. Hudson's testimony is supported by other evidence. Government Exhibit 1(a), a video recording showing the Defendant using his key to enter the residence through the front door, confirms Mr. Hudson's testimony. (Doc. 74). Furthermore, Government Exhibit 1(j) is body camera footage of an officer

interviewing Mr. Hudson, during which Mr. Hudson states his son has a room in the residence that he uses when he stays there. (*Id.*). Mr. Hudson told the officer that the vehicles in the carport attached to the house are owned by the Defendant.

Seminole County Sheriff's Officer Jonathan Jusino participated in executing the search warrant on January 9, 2024, and testified to finding evidence linking the Defendant to one of the bedrooms. Officer Jusino recovered clothing consistent with the Defendant's physical size, suitcases with identification tags bearing the Defendant's name, a gold chain with the Defendant's initials, as well as the Defendant's passport, birth certificate, and financial records. Special Agent Troy Holland testified that the Defendant is known to reside at the residence, even though DAVID records list a different address. When Agent Holland returned to the residence on August 21, 2024 to collect DNA, the Defendant answered the door and, during the conversation, told Agent Holland that he had not lived at the home for ten years and volunteered that he does not stay there. (*See* Doc. 74-15 15, 19:09:52)

The Government correctly notes that the Defendant bears the burden of demonstrating standing. (Doc. 51, p. 5) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)). The Defendant's evidence must be "sufficiently definite, specific, detailed, and nonconjectural to allow the court to determine that a substantial claim exists." (*Id.*) (quoting *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)). The Government argues that the Defendant lacks standing because he

told law enforcement he does not live at the residence and does not stay there, which contradicts the evidence presented during the hearing. (*Id.* at pp. 5–7).

The Government relies on *United States v. Sweeting*, 933 F.2d 962, 963–64 (11th Cir. 1991), where the defendants arrived at the residence during a search and both denied having any connection to the residence. (*Id.* at pp. 6–7). A search of the residence uncovered "personal documents and effects identifying the [defendants]," along with various firearms. *Sweeting*, 933 F.2d at 963. Despite the evidence linking the defendants in *Sweeting* to the residence, the court found they lacked standing to challenge the search. *See id.* at 964–65. The Government also cites *United States v. Maxi*, 866 F.3d 1318, 1326 (11th Cir. 2018), where the court acknowledged that when a defendant denies residence at the place being searched and later presents evidence of a reasonable expectation of privacy, standing may still be established. That is, "[w]hile . . . a party can disclaim his privacy interest, such a disclaimer is only one factor that [the court] weigh[s] in [its] consideration of whether [the defendant] had a reasonable expectation of privacy." *Id.* Because the evidence in *Maxi* indicated that the defendant was more than just an overnight guest and was effectively a subtenant, the court determined standing existed. *See id.*

The question here is whether the Defendant's statement to law enforcement officers collecting his DNA on August 21, 2024, that he does not reside at or "stay" at the residence is enough to deny standing considering the other evidence. The Court finds that the Defendant's denial does not eliminate his standing. First, the

Defendant's claim that he does not live at the residence is not inconsistent with having control over the property that would give him standing. One does not need to be a full-time resident to challenge a search. Second, the Defendant's statement that he does not "stay" there is too vague to have much meaning. Lastly, the testimony of Mr. Hudson and the video evidence of the Defendant entering the home with a key, along with proof of occupancy, show that the Defendant is more than just an overnight guest. He stored personal items, such as his birth certificate and passport, in his room, entered the residence regularly and freely, stayed overnight on occasion, and could exclude others. In short, the Defendant has a reasonable expectation of privacy in the house and its surroundings and has standing to contest the search warrant. *See California v. Ciraolo*, 476 U.S. 207, 212–13, (1986) ("The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home.").

### C.    Probable Cause and the *Leon* Good Faith Exception

#### 1.    *Probable Cause*

"To establish a finding of probable cause, a search-warrant affidavit need only contain sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." *United States v. Shabazz*, 887 F.3d 1204, 1214 (11th Cir. 2018) (citation modified) (citations omitted). The judge reviewing a warrant application is to "make a practical, common-sense decision" whether probable cause exists based on the information warrant affidavit. *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013)

(quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994). Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." *Id.* (citations omitted).

The affidavit supporting the search warrant for 1442 Mara Court provides the following information for the issuing judge to determine probable cause: (1) Agent Dashonda Morgan approached the front door of the residence and "could smell the distinct odor of burnt Cannabis emitting from within the residence"; (2) a query of the Prescription Drug Monitoring Program revealed that "neither of the two occupants known to reside" at the residence "have an active medical marijuana license on file"; (3) the Defendant is a known resident of 1442 Mara Court and "is a very well-known high-level Cocaine and Cannabis Trafficker"; (4) the Defendant was convicted of "trafficking in Cocaine 28 grams or more under 200 grams" in 2010; and (5) "in September 2023, CCIB executed a residential search warrant a few houses down from 1442 Mara Court" and "information was received from a identifiable reliable source that the evidence seized . . . , which included illegal drugs, originally came from 1442 Mara Court." (*See* Doc. 51–1, pp. 6–7).

The issuing judge found probable cause to believe evidence relevant to the felony offense of Possession of a Controlled Substances, to wit: Cannabis, in

violation of section 893.13, Florida Statutes, is located in and on the premises and curtilage. (*Id.* at p. 2). The issuing judge authorized law enforcement to search for controlled substances (including cannabis), currency, drug packaging, drug paraphernalia, scales, measuring devices, documents (broadly defined), mobile communication devices, and all other Electronic Storage Media and related encryption keys and passwords, and items showing dominion and control of the property. (*See id.*).

The Defendant submits that the affidavit does not support a finding of probable cause. (Doc. 38, pp. 2–3). The Defendant argues that the search warrant contains information that is either stale or conclusory and does not provide a nexus between the premises and the searched-for items. (*Id.* at p. 3). Moreover, the Defendant contends that Agent Morgan's detection of the odor of *burnt* cannabis does not establish probable cause to believe evidence of the crime of felony possession of cannabis will be found in the residence. (*Id.* at p. 4). The Defendant also submits that the warrant was overbroad since it authorized agents to search for all "controlled substances" and for items unrelated to "burnt cannabis," such as currency, documents, and mobile communication devices. (*Id.* at p. 5). Finally, the Defendant claims the execution of the search warrant was unlawful, because agents exceeded the scope of the warrant by searching vehicles located in the backyard of the residence.[5] (*Id.*).

---

[5]    The judge authorized the search of vehicles "reasonably believed to be engaged in or connected with said illegal activity." (Doc. 51-1, p. 2).

The Defendant notes the following deficiencies in the affidavit: (1) the affiant fails to state the basis for his claim that the Defendant is a "well-known Cocaine and Cannabis Trafficker" who resides at the residence; (2) the Defendant's conviction for cocaine trafficking in 2010 is stale; and (3) the reference to a drug seizure involving a neighboring home in September 2023 and, specifically, the assertion that the drugs came from 1442 Mara Court is unsubstantiated and vague. (*Id*. at p. 5). That is, the affiant does not specify the type of drugs that were seized from the neighbor's house, fails to establish the reliability of the individual claiming the drugs originated from 1442 Mara Court, and fails to state that the Defendant was the source. (*Id*.). The issue is whether the issuing judge had a substantial basis for finding probable cause notwithstanding these concerns.

In *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983), the Supreme Court explained that:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed.

"Probable cause exists when under the 'totality-of-the-circumstances … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (quoting *Illnois v. Gates*, 462 U.S. at 238). "In other words, probable cause exists

'where the facts lead a reasonably cautious person to believe that the search will uncover evidence of a crime.'" *Id.* (quoting *United States v. Burgos,* 720 F.2d 1520, 1525 (11th Cir. 1983)). In *Tobin*, agents were conducting surveillance of a residence believed to be involved in drug trafficking, and they approached the residence and detected the odor of marijuana. *Id.* at 1511. The court held that, once the officers detected the odor of marijuana emanating from the residence, their suspicion rose to the level of probable cause. *Id.* at 1512; *see also United States v. Yarbrough*, 272 F. App'x 438, 443 (6thCir. 2007) (per curium) ("[A]n officer's detection of the smell of marijuana in a home may by itself establish probable cause," and "[w]hen the smell of marijuana is coupled with [a][] tip of drug activity, probable cause exists for a search warrant." (citations omitted)).

Here, the issuing judge was informed that the Defendant was known to the affiant to reside at 1442 Mara Court and is a recognized high-level cocaine and cannabis trafficker. (*See* Doc. 51-1, pp. 6–7). The issuing judge also knew Agent Morgan had become familiar with the burnt and fresh odor of cannabis and reasonably believed she smelled burnt cannabis coming from the residence. (*See id.* at p. 7). The issuing judge further knew that a records check showed that neither of the two occupants of the residence had a medical marijuana card. (*See id.*). Even if one were to redact from the affidavit the information about the Defendant's cocaine trafficking conviction from 2010, which the Government concedes was stale, and remove details about the search of a neighbor's property the previous year, probable cause would still exist to believe evidence of illegal cannabis

possession could be found at the residence. (Doc. 51, p. 9). The Defendant makes a valid point that the odor of burnt cannabis is consistent with cannabis having been consumed, and Agent Holland acknowledged such at the evidentiary hearing. Nonetheless, the issuing judge only needs to find that, based on the totality of the circumstances, there is a fair probability that evidence of a crime or contraband will be located. Ultimately, the issuing judge had a substantial basis for finding probable cause to search.

### 2. The Breadth of the Search Warrant

As to the scope of the warrant, the Fourth Circuit in *United States v. Anderson* addressed the split amongst circuits regarding whether the connection between the place to be searched and the items to be seized can be inferred from the circumstances surrounding the alleged offense. 851 F.2d 727, 729 (4th Cir. 1988). While the Fifth, Sixth, Eighth, and Ninth Circuits "have held that the nexus . . . may be established by the nature of the item and the normal inferences of where one would likely keep such evidence," the Eleventh Circuit "has held that there must be a 'substantial basis' to conclude that the instruments of the crime will be discovered on the searched premises." *Id.* (citations omitted). The court in *Anderson* further noted that the good faith exception under *United States v. Leon* may protect the warrant from the nexus challenge, but the court nonetheless resolved the conflict by holding that the approach endorsed by the Fifth, Sixth, Eighth, and Ninth Circuits is more persuasive. *See id.* Therefore, when evaluating the validity of a warrant, only the information presented to the magistrate judge

16

should be considered, but the connection between the items searched for and the location can be inferred from the circumstances surrounding the offense. *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982). "Great deference [must be] given to the magistrate's finding which should be upheld in marginal or doubtful cases." *Id.* (citing *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

The affiant relayed personal knowledge that the Defendant is a well-known high-level cocaine and cannabis trafficker, as corroborated by his prior conviction.[6] (Doc. 51, p. 7). The affiant also provided a detailed description of the tools of the trade employed by drug traffickers. (*Id.* at pp. 5–6). The issuing judge, therefore, could infer from the Defendant's known drug trafficking activities, which included cannabis, that the typical instrumentalities relating to drug dealing could be located in the residence. The warrant was not overbroad, and authorizing the search for all illegal drugs—not just marijuana—does not render it so. The defense cites no legal authority for the proposition that authorizing law enforcement to search for all illegal drugs when probable cause exists to search for some illegal drugs renders the warrant overly broad. As a practical matter, if one is authorized to search for cannabis and finds cocaine, doesn't the plain view doctrine apply?

---

[6] While Agent Holland could have elaborated upon his basis for this statement, the issuing judge was entitled to rely on Agent Holland's sworn declaration that Mr. Perkins is known to be a high-level cocaine and cannabis trafficker.

### 3.    The Vehicle Search

The Defendant submits that the search of the vehicles in the backyard was beyond the scope of the warrant. (Doc. 38, p. 6). The Defendant correctly notes that the warrant only permitted the search of vehicles on the property if such vehicles were "reasonably believed to be engaged in or connected with said illegal activity." (Doc. 72, p. 5). Officer Jesse McGrath testified at the evidentiary hearing that he participated in the search at 1442 Mara Court and was aware of the conversations on the wiretap indicating that cocaine was stored in vehicles located on the property. When the officers executed the warrant, they located a Corvette in an open carport. (Doc. 74). Inside the carport, officers saw a workspace with plastic wrapping material, baggies, an electric scale, and white powder. (Doc. 51, p. 4; Doc. 74). Officers also observed firearms on top of the Corvette. (Doc. 51, p. 4; Doc. 74). Officers then searched a Chevrolet Impala and a Ford Taurus in the backyard and recovered eighteen kilograms of cocaine from the Impala and numerous weapons from the Taurus. (Doc. 51, p. 4; Doc. 74).

The Government argues that having found packaging material and suspected cocaine in the carport, along with weapons on top of the Corvette, it was reasonable to believe contraband could be found in the other vehicles. (Doc. 51, pp. 4–5). The Court agrees with the Government. The agents knew from the wiretap that it was highly likely that cocaine was being stored in a vehicle located on the premises. Having found packaging materials in the carport and after ruling out the Corvette as the vehicle used to store the cocaine discussed on the wiretap, the

officers had a reasonable belief that the cocaine was located in either the Impala or the Taurus. The warrant authorized the search of vehicles under these circumstances. Therefore, the execution of the warrant was proper.

### 4.   *Good Faith*

Even assuming the warrant was not supported by probable cause, the search stands as valid. Under *Leon*, "the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate." *United States v. Kilgore*, No. 1:11-cr-518-CAP-RGV, 2012 WL 5334298, at *7 (N.D. Ga. Sept. 13, 2012) (citations omitted). "Good faith is an objective standard judged by what a reasonable law enforcement officer would perceive under the circumstances, not a standard judged by a legally trained magistrate or judge." *Id.* (citing *United States v. Taxacher*, 902 F.2d 867, 871–72 (11th Cir. 1990)).

In *United States v. Martin*, the Eleventh Circuit restated the principle that the *Leon* good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." 297 F.3d at 1313. The court instructed reviewing judges to begin their analysis by first deciding whether "one of the four limited circumstances where the *Leon* good faith

exception does not apply" is present.[7] *See id.* While the Defendant did not brief the applicability of the *Leon* exception, the defense argued that the fourth exception to *Leon* applies. That is, the Defendant argues that a reasonably well-trained officer would know the warrant is defective. For the reasons discussed above, the Court finds that a reasonably well-trained officer would have relied on the warrant as supported by probable cause.

Moreover, as *Martin* instructs, "in determining 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization,' 'all of the circumstances . . . may be considered.'" *Martin*, 297 F.3d at 1318–19 (quoting *Taxacher*, 902 F.2d at 871). The "totality of the circumstances" includes facts not presented to the issuing judge. *Id.* at 1319. The Eleventh Circuit further explained that "facts outside the affidavit should be considered" when deciding whether a reasonably well-trained officer would have known the search was illegal despite the judge's authorization. *Id.* As discussed above, the affiant and officers executing the warrant knew a wiretap was in effect and that intercepted conversations revealed nearly twenty kilograms of cocaine were concealed inside one of the vehicles located on the property. Based on the

---

[7] "The four sets of circumstances are as follows: (1) where 'the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth'; (2) 'where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, [](1979)'; (3) where the affidavit supporting the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; and (4) where, depending upon the circumstances of the particular case, a warrant is 'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *Martin*, 297 F.3d at 1313.

totality of the evidence known to the officers, the *Leon* good faith exception applies, assuming the warrant on its face was not supported by probable cause.

## IV. CONCLUSION

It is **ORDERED AND ADJUDGED** that the Defendant's Motion to Suppress, Second Motion to Suppress Evidence, and Amended Motion to Suppress (Docs. 38, 71, 72) are **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on July 14, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties